FILED

2022 Jan-11  AM 08:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **EMILY VINCENT** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.: 2:21-cv-00514-ACA** |
| | ] | |
| **JEFFERSON COUNTY BOARD** | ] | |
| **OF EDUCATION, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Defendants Jefferson County Board of Education ("JCBOE") and ATI Physical Therapy's ("ATI") motions to dismiss the amended complaint. (Docs. 13, 16).

Plaintiff Emily Vincent filed this lawsuit against JCBOE, ATI, Sam Shade, and Michael Turner alleging Title VII violations and state-law tort claims. (Doc. 7). Ms. Vincent's amended complaint asserts the following claims: (1) a Title VII discrimination claim against JCBOE ("Count One"); (2) a Title IX claim against JCBOE ("Count Two"); (3) claims for negligent training, supervision, and retention against JCBOE ("Count Three"); (4) a Title VII discrimination claim against ATI ("Count Four"); (5) a Title VII retaliation claim against ATI ("Count Five"); (6) a claim for intentional interference with a business relationship against Coach Shade

("Count Six"); and (7) a claim for intentional interference with a business relationship against Principal Turner ("Count Seven").

Mr. Shade and Mr. Turner have answered Ms. Vincent's complaint. (Doc. 19). ATI and JCBOE have each filed a motion to dismiss the claims against them. (Docs. 13, 16). In her response to JCBOE's motion to dismiss, Ms. Vincent agreed that Count Three should be dismissed. (Doc. 25 at 20). Accordingly, the court **DISMISSES** Count Three of Ms. Vincent's complaint **WITH PREJUDICE**. The court has reviewed Ms. Vincent's remaining claims and, for the reasons given below, **GRANTS IN PART** JCBOE's motion to dismiss and **DENIES** ATI's motion to dismiss.

## I.   <u>BACKGROUND</u>

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

Plaintiff Emily Vincent is a female athletic trainer. (Doc. 7 at 5 ¶ 19, 22). Defendant ATI is a physical therapy company that contracts with the Jefferson County school system to provide athletic training services at various schools throughout the district. (*Id*. at 25 ¶ 152). One such school is Pinson Valley High School ("PVHS"), where ATI owns and operates a sports medicine department

located on PVHS's campus. (*Id*. at 25 ¶ 151). Ms. Vincent worked as an ATI athletic trainer at PVHS from August 2017 to June 2020. (*Id*. at 25 ¶¶ 149–51).

While employed with ATI, Ms. Vincent was hired by Defendant JCBOE in March 2020 to teach health at PVHS for the remainder of the school year. (*Id*. at 5 ¶ 20). In May 2020, JCBOE hired Ms. Vincent as PVHS's assistant athletic director. (Doc. 7 at 5–6 ¶¶ 20, 21). Ms. Vincent remained employed as an athletic trainer for ATI while also performing the jobs of PVHS health teacher and assistant athletic director. (*Id*. at 6 ¶¶ 25, 26).

Sam Shade was the athletic director and head football coach at PVHS. (*Id*. at 8 ¶ 42). Coach Shade had conversations with Ms. Vincent regarding her duties as assistant athletic director at PVHS. (*Id*. at 8 ¶ 47). As assistant athletic director, Ms. Vincent was responsible for managing Dragonfly, the internal system for athletes (doc. 7 at 8 ¶ 49), ensuring that all athletes had proper physicals and medical paperwork to ensure eligibility (*id*. at 9 ¶ 51), ensuring that executed liability forms were returned by athletes (*id*. at 9 ¶ 53), making sure that all athletic facilities were in good repair (*id*. at 9 ¶ 57), and updating PVHS's Emergency Action Plan (*id*. at 10 ¶ 59). In addition, Ms. Vincent was tasked with implementing a COVID-19 safety and guidance plan. (Doc. 7 at 7 ¶ 33). In her capacity as PVHS assistant athletic director, Ms. Vincent conducted a meeting wherein she outlined the COVID-19 plan. (*Id*. at 7 ¶¶ 36–37). Ms. Vincent introduced herself at the meeting

as PVHS's assistant athletic director without objection from Principal Turner or Coach Shade.  (*Id.* at 8 ¶¶ 41, 45, 46).

But Ms. Vincent's stint in her new position was short lived.  Just one week after informing Ms. Vincent she was hired by JCBOE as the assistant athletic director, Principal Turner informed Ms. Vincent that she no longer held that position. (*Id.* at 10 ¶ 61).  Ms. Vincent told her coworker Coach Sheppard about her removal from the position.  (*Id.* at 10–11 ¶¶ 64, 65).  In response, Coach Sheppard stated that Coach Shade had previously expressed discomfort towards Ms. Vincent's new position because he thought that working with a female in football was "weird."  (*Id.* at 11 ¶ 66).

Just two days later, Coach Shade approached Ms. Vincent in her office and informed her she was to leave her keys at the end of the day.  (Doc. 7 at 11 ¶¶ 67, 68).  Ms. Vincent understood that she was terminated but was unaware of any justification for her termination.  (*Id.* at 12 ¶ 73).  According to Ms. Vincent, no one complained about her performance as an athletic trainer.  (*Id.* at 36 ¶¶ 224, 225).

After Coach Shade terminated Ms. Vincent, she went to her ATI supervisor, Director of Sports Medicine Jason Pequette, to inform him that she had been terminated by Coach Shade.  (*Id.* at 12 ¶ 75).  Mr. Pequette instructed Ms. Vincent to "play nice," and leave her keys as instructed, and he promised to find out more information.  (*Id.* at 12 ¶ 76).  Ms. Vincent relayed Coach Shade's comment about

feeling weird and uncomfortable working with a female.  (*Id*. at 12 ¶ 79).  Mr. Pequette replied "that's she said he said, and you can't prove it."  (*Id*. at 12 ¶ 80).

At some point, Mr. Pequette instructed Ms. Vincent to take the following Monday off and not to report to work at PVHS.  (Doc. 7 at 12 ¶ 77).  Shortly thereafter, ATI terminated Ms. Vincent's employment as an athletic trainer at PVHS and instructed her not to return to work at PVHS or contact PVHS employees.  (*Id*. at 6–7, 28 ¶¶ 81, 171).  Ms. Vincent asked Mr. Pequette why she was terminated from her positions at PVHS but was not provided an explanation.  (*Id*. at 12 ¶ 78).

On June 11, 2020, ATI informed Ms. Vincent that, to keep her job as an ATI athletic trainer, she had to accept a lower paying position at another location or a position that required a three hour commute each day.  (*Id*. at 37 ¶ 234).  Ms. Vincent had until June 15, 2020 to decide before ATI would classify her as having resigned.  (*Id*. at 37 ¶ 235).  In the meantime, ATI hired a male athletic trainer to fill Ms. Vincent's spot at PVHS.  (Doc. 7 at 29 ¶ 180).

Ms. Vincent's temporary position as a health teacher was set to expire at the end of the school year, and she does not challenge JCBOE's failure to renew that position.  (Doc. 25 at 19).  But Ms. Vincent was never given a reason for her termination from PVHS as an athletic trainer or from JCBOE as the assistant athletic director and her repeated inquiries went unanswered.  (*Id*. at 27–29 ¶¶ 170, 177,

178).   She alleges that ATI never investigated her complaints of gender discrimination.  (*Id*. at 28 ¶¶ 172, 175).

In July 2020, Ms. Vincent filed charges of discrimination with the Equal Employment Opportunity Commission alleging gender discrimination and retaliation against Defendants JCBOE and ATI.  (Doc. 7 at 3–4 ¶ 10, 15).  After properly exhausting her administrative remedies she filed the present suit against Defendants JCBOE, ATI, Mr. Shade, and Mr. Turner.

## II.   **DISCUSSION**

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true and construes the complaint in the plaintiff's favor. *Butler*, 685 F.3d at 1265.  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds in *Davis v. Scherer*, 468 U.S. 168 (1984)).  Therefore, to survive a motion to dismiss, a plaintiff must plead a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   A claim is plausible on its face when the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. Title VII Claim Against JCBOE

In Count One, Ms. Vincent alleges that JCBOE violated Title VII by discriminating against her on the basis of sex. (Doc. 7 at 5–15 ¶¶ 18–100). JCBOE responds that it did not employ Ms. Vincent as an assistant athletic director and that it took no adverse action with respect to Ms. Vincent's teaching position. (Doc. 16 at 7, 11). Because Ms. Vincent does not make a claim based on her teaching position with JCBOE (*see* doc. 25 at 19), the court's analysis focuses only on JCBOE's argument that it did not employ Ms. Vincent as an assistant athletic director.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can prove discrimination with either direct or circumstantial evidence. *Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008). But a prima facie claim of discrimination is not required at the motion to dismiss stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002). A "short and plain statement" that gives the "defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" will suffice. *Id*. at 512.

JCBOE argues that Count One should be dismissed because it never employed Ms. Vincent as assistant athletic director for PVHS. (Doc. 16 at 11). JCBOE attempts to characterize this dispute as a legal one by citing to Alabama law that sets

forth a procedure for hiring school employees.  (*Id*. at 11–18 ¶ 6).  Under Alabama law, a principal is not entitled to make hiring decisions without Board approval. (*Id*.).  JCBOE argues that Ms. Vincent's claim therefore fails as a matter of law because Principal Turner lacked the authority to hire her as assistant athletic director. (*Id*.).   But this argument mischaracterizes Ms. Vincent's allegations in her complaint.  Ms. Vincent alleges that she "was hired by JCBOE to be Assistant Athletic Director at PVHS" (doc. 7 at 5 ¶ 21), and that Principal Turner communicated the hiring to her (*id*. at 6 ¶ 30).

The court reemphasizes that, at this stage in the proceedings, it accepts the facts alleged in the complaint as true and views those facts in the light most favorable to Ms. Vincent.  Ms. Vincent alleges that JCBOE hired her as assistant athletic director and that she performed responsibilities as assistant athletic director that she would not otherwise have as an ATI employee or PVHS health teacher.  (*Id*. at 8–10 ¶¶ 47–60).   Moreover, Ms. Vincent alleges that she held herself out as assistant athletic director without objection from Principal Turner, Coach Shade, or JCBOE superintendent Dr. Gonsoulin.  (*Id*. at 7–8 ¶¶ 36, 37, 41, 45, 46).  At this juncture, JCBOE's argument about the effects of its hiring procedure asks the court to delve into a factual dispute that cannot be decided on a motion to dismiss.

Accordingly, the court **DENIES** Defendant JCBOE's motion to dismiss Count One of Ms. Vincent's amended complaint.

B. Title IX Claim Against JCBOE

In Count Two, Ms. Vincent alleges that JCBOE violated Title IX by discriminating against her on the basis of sex. (Doc. 7 at 17–21 ¶¶ 101–32). She relies on the same factual allegations underlying her Title VII claim to support her Title IX claim. (*Id.*).

Title IX of the Education Amendments Act of 1972 prohibits sex discrimination in educational programs or activities operated by institutions receiving federal funds. 20 U.S.C. § 1681. JCBOE argues that Ms. Vincent's Title IX claim must fail because Title IX does not provide plaintiffs with a private right of action for employment discrimination. (Doc. 16 at 19–21 ¶¶ 7, 8). Courts disagree as to whether an employee of a federally funded educational institution may sue for employment discrimination under Title IX. Several Circuits have allowed such suits. *See e.g.*, *Preston v. New River Cmty. Coll.*, 31 F.3d 203, 205–06 (4th Cir. 1994); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 896–97 (1st Cir. 1988); *Brine v. Univ. of Iowa*, 90 F.3d 271, 276 (8th Cir. 1996). The Fifth and Seventh Circuits have held to the contrary. *See Waid v. Merrill Area Schs*, 91 F.3d 857, 861–62 (7th Cir. 1996) (abrogated on other grounds); *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995) ("Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions."). The Eleventh Circuit has not addressed this issue.

In *Lakoski*, the Fifth Circuit held that "individuals seeking money damages for employment discrimination on the basis of sex in federally funded educational institutions may not assert Title IX." 66 F.3d at 758. In coming to this conclusion, the court relied on Supreme Court precedent and Congressional intent. The *Lakoski* court explained that, although the Supreme Court has not squarely addressed the relationship between Title IX and Title VII, it *has* held that Title VII preempts § 1985 actions because "[i]f a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of [Title VII's] detailed and specific provisions of the law [and] . . . could completely bypass the administrative process." *Id.* at 775 (quoting *Great Am. Fed. Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979) (internal quotations omitted). The Fifth Circuit also explained that the Supreme Court has noted "[i]n a variety of contexts . . . that a precisely drawn, detailed statute pre-empts more general remedies." *Id.* (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (internal quotations omitted).

The Fifth Circuit also examined Title VII's legislative history and concluded that "Congress did not intend Title IX to create a mechanism by which individuals could circumvent . . . pre-existing Title VII remedies." *Id.* at 757. Instead, the court concluded that Congress intended Title IX and Title VII to provide different remedies for the same right: where Title VII provides individuals with redress for

employment discrimination, Title IX empowers federal agencies to terminate funding upon a finding of employment discrimination. *Id.*

Ms. Vincent seeks damages and injunctive relief under Title IX for employment practices for which Title VII already provides a remedy. The court is persuaded by the Fifth Circuit's reasoning that such a scenario renders "a private right of action under [T]itle IX duplicative" and is not what Congress intended when it passed the statute. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 248–49 (5th Cir. 1997); *see also Lakoski*, 66 F.3d at 757. Accordingly, this court holds that Title VII is the exclusive remedy for claims of employment discrimination in federally funded educational institutions.

Therefore, the court **DISMISSES** Count Two of Ms. Vincent's amended complaint **WITH PREJUDICE**.

### C. Title VII Claim Against ATI

In Count Four, Ms. Vincent alleges that ATI violated Title VII by discriminating against her on the basis of sex. Specifically, Ms. Vincent alleges that ATI terminated her position as athletic trainer at its PVHS department, replaced her with a male athletic trainer, and forced her to accept a position elsewhere with less pay and less desirable working conditions. (Doc. 7 at 25–33 ¶¶ 147–203). In response, ATI argues that the court should dismiss Count Four because it was

JCBOE that made the decision to terminate Ms. Vincent's employment at PVHS. (Doc. 13 at 6–10).

To be liable for violating Title VII, a defendant must be an "employer" within the meaning of the Act. *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 932 (11th Cir. 1987). Ms. Vincent alleges that ATI employed her as an athletic trainer at its sports medicine department located on PVHS's campus (doc. 7 at 27 ¶ 161), and that as her employer, ATI controlled whether she could return to that location (*id*. at 28 ¶¶ 171, 176, 180; doc. 25 at 9). According to Ms. Vincent, ATI made the ultimate decision to remove her from employment at its PVHS location and replace her with a male athletic trainer. (Doc. 7 at 29 ¶ 180; doc. 25 at 5–6).

ATI concedes its status as Ms. Vincent's employer but maintains that it cannot be held liable for her termination. (*See* doc. 13 at 7; doc. 31 at 2). ATI argues that Ms. Vincent cannot state a claim against it because only "co-defendants JCBOE, Shade, and Turner intentionally prevented Vincent from continuing to perform any athletic training at Pinson Valley" (doc. 13 at 6–7), and that once JCBOE made that decision, ATI had no choice but to comply (*id*. at 7–9). To support its argument, ATI cites to the Eleventh Circuit's decision in *Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236 (11th Cir. 1998), which stands for the proposition that one entity cannot be liable for an employment decision made by another. *Id*. at 1244–45; (Doc. 13 at 8–9).

But *Llampallas* involved an appeal of a decision following a bench trial and therefore assumes the existence of facts not currently in evidence in this case. Ms. Vincent alleges that, after JCBOE removed her from her position as assistant athletic director, ATI also removed her from her position as athletic trainer at its PVHS sports medicine department and replaced her with a male employee. (Doc. 7 at 26–27, 29 ¶¶ 156, 161, 180). These facts, which the court must accept as true at this stage, sufficiently state a claim for employment discrimination, and ATI's arguments to the contrary are better suited for a motion for summary judgement.

Accordingly, the court **DENIES** ATI's motion to dismiss Count Four.

4. Title VII Retaliation Claim Against ATI

In Count Five, Ms. Vincent alleges that ATI violated Title VII by retaliating against her for engaging in protected activity. To state a claim for retaliation under Title VII, Ms. Vincent must plausibly allege that "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

Ms. Vincent alleges that after she told her ATI supervisor, Mr. Pequette, about Coach Shade and Principal Turner's discriminatory conduct, ATI terminated her position at PVHS and forced her to accept a position elsewhere with less pay and less desirable employment conditions. (Doc. 7 at 35–38 ¶¶ 218–38). ATI argues

that Ms. Vincent's allegations do not state a claim for retaliation because the adverse employment action she allegedly suffered occurred *before* she complained of discrimination to ATI. (Doc. 13 at 10–11; Doc. 31 at 8–9). ATI's motion to dismiss ignores Ms. Vincent's allegations regarding her subsequent reassignment. In its reply brief, ATI argues that "[f]ar from being adverse acts, ATI's reassignment efforts were helpful acts of aid towards Vincent." (Doc. 31 at 9).

Again, the court emphasizes that it must accept Ms. Vincent's allegations in her complaint as true and view those allegations in the light most favorable to her. Ms. Vincent alleges that six days after telling Mr. Pequette of the alleged discrimination at PVHS, ATI informed Ms. Vincent that she could not return to ATI's sports medicine department located on PVHS's campus. (*Id*. at 37 ¶ 234). Under these facts, ATI independently made the decision to remove Ms. Vincent as an athletic trainer at its PVHS site *after* JCBOE made the decision to remove Ms. Vincent as assistant athletic director at PVHS.

Additionally, the court rejects ATI's argument that Ms. Vincent's subsequent reassignment to a position with less favorable conditions does not constitute materially adverse employment action. Title VII's anti-retaliation provision is broad and prohibits an employer from taking action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Reassignment

to a position with less pay and/or a longer commute qualifies as materially adverse under this definition.

The court cannot, on a motion to dismiss, resolve the factual controversy surrounding ATI's involvement in terminating Ms. Vincent's position at PVHS. In her complaint, Ms. Vincent alleges that, after she complained of sex discrimination to Mr. Pequette, ATI removed her as athletic trainer at ATI's PVHS location and told her she must accept a lower paying position or a position with a much longer commute in order to maintain employment. (Doc. 7 at 37 ¶ 234). These allegations sufficiently state a claim for Title VII retaliation.

Accordingly, the court **DENIES** ATI's motion to dismiss Count Five.

## III.   <u>CONCLUSION</u>

For the reasons explained above, the court **GRANTS IN PART** the Defendants' motions to dismiss Ms. Vincent's amended complaint. The court **GRANTS** JCBOE's motion to dismiss count two **WITH PREJUDICE**. The court **DENIES** the motions to dismiss the remaining claims. Counts one, four, and five will proceed as pleaded.

**DONE** and **ORDERED** this January 11, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE