FILED

2023 Jun-22  PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## IN THE SOUTHERN DIVISION

| | | |
|---|---|---|
| **EMILY VINCENT** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| v. | ] | **Case No.: 2:21-cv-00514-ACA** |
| | ] | |
| **JEFFERSON COUNTY BOARD** | ] | |
| **OF EDUCATION, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

Plaintiff Emily Vincent was employed by Defendant ATI Holdings, LLC, as an athletic trainer but was assigned to work at Pinson Valley High School every day pursuant to a contract between ATI and Pinson Valley. A couple days after Ms. Vincent learned that the athletic director and head football coach at Pinson Valley, Defendant Sam Shade, said he did not like working with women, Defendant Michael Turner, the principal at Pinson Valley, requested that ATI remove Ms. Vincent from the school. After the removal, ATI offered Ms. Vincent her pick of its other available positions and Ms. Vincent accepted one with a corresponding pay cut.

Ms. Vincent filed suit against the Jefferson County Board of Education, ATI, Mr. Shade, and Mr. Turner. The remaining claims in this case are (1) gender discrimination in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

("Title VII"), against ATI; (2) retaliation in violation of Title VII against ATI; (3) intentional interference with a business relationship under Alabama law against Mr. Shade; and (4) intentional interference with a business relationship under Alabama law against Mr. Turner. (Doc. 7 at 25–47; *see* doc. 59).

Currently before the court is ATI's motion for summary judgment. (Doc. 53). The court has considered the arguments and evidence submitted by the parties and **WILL GRANT** ATI's motion for summary judgment because Ms. Vincent has not established: (1) a convincing mosaic of circumstantial evidence from which a trier of fact could infer discriminatory intent; (2) that her gender was a motivating factor for any of ATI's actions; or (3) that ATI's reason for her removal and reassignment was a pretext for retaliation.

The court **WILL ENTER SUMMARY JUDGMENT** in favor of ATI and against Ms. Vincent.

## I.    BACKGROUND

When reviewing a motion for summary judgment, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted).

ATI provides rehabilitation services and specializes "in several fields, including sports medicine." (Doc. 54-1 at 2–3 ¶ 3). As part of its sports medicine services, ATI contracts with "local schools and youth sports programs to provide athletic trainers to" these programs. (*Id.* at 3 ¶ 4). ATI and Pinson Valley High School entered such an agreement. (*Id.* at 3 ¶ 5, 9–15). Per that agreement, ATI was required to "designate [two] individual[s] to provide" athletic training services to Pinson Valley "with the approval of the School." (*Id.* at 12–13; *see also id.* at 3 ¶ 5).

Ms. Vincent was hired by ATI as an athletic trainer in 2017 under the supervision of a direct supervisor and Jason Pequette, ATI's sports medicine director. (Doc. 50-1 at 17–18; doc. 54-1 at 3 ¶ 6; doc. 54-3 at 36). ATI stationed Ms. Vincent at Pinson Valley where she was supervised by both its athletic director and its principal, Mr. Turner. (Doc. 50-1 at 17–18; doc. 54-3 at 7; doc. 54-1 at 3 ¶ 6). The athletic trainer position at Pinson Valley required Ms. Vincent to work closely with the school's football team, as well as other teams at the school. (Doc. 54-3 at 48, 79). While employed at ATI, Ms. Vincent never received a bad review, was never put on a growth plan, was never reprimanded, and only received praise for her performance. (*Id.* at 65–66).

When Ms. Vincent was hired, the other athletic trainer stationed at Pinson Valley was a man, Chris Woodard. (*Id.* at 37–38). Ms. Vincent informed ATI that she witnessed an incident where Mr. Woodard allowed students to engage in

3

inappropriate behavior. (*Id.* at 38–39; doc. 54-4 at 6). Soon after, Ms. Vincent's direct supervisor at ATI indicated he was going to transfer her to a different high school. (Doc. 54-3 at 43). Ms. Vincent opposed the transfer and believed that it was in retaliation for her complaints about Mr. Woodard. (*Id.*). Ms. Vincent was not transferred at that time, but Mr. Woodard was transferred to another school in 2018. (*Id.* at 15, 44).

Another male athletic trainer employed by ATI, Heath Blackmon, was assigned to Pinson Valley later that year or at the beginning of 2019. (*Id.* at 16). Ms. Vincent believed that Mr. Blackmon was doing a poor job in his athletic trainer duties. (Doc. 54-3 at 16–17). Ms. Vincent initially took her concerns to Mr. Turner, who asked her to document Mr. Blackmon's deficiencies. (*Id.* at 17, 51). At the beginning of March 2020, Mr. Turner asked Ms. Vincent to email James Bush, her direct supervisor at ATI, a list of specific incidents where Mr. Blackmon did his job incorrectly. (*Id.* at 17; doc. 54-4 at 12–16). Mr. Turner is copied on the email. (Doc. 54-3 at 50; doc. 54-4 at 12).

Later that month, Mr. Turner emailed Mr. Pequette to "request[] that [Mr. Blackmon] be removed from Pinson Valley High School effective immediately." (Doc. 54-8 at 57). Mr. Pequette testified that after he received this email from Mr. Turner, ATI HR and management made the decision to move Mr. Blackmon from Pinson Valley (doc. 54-12 at 19) because "[w]hen the school

says [an athletic trainer is] not to return, [ATI] can't send them back" to that school (*id.* at 20). After Mr. Blackmon was removed from Pinson Valley, Mr. Pequette "gathered information from area supervisors about what positions were available and then let [Mr.] Blackmon elect which location he preferred to transfer to." (Doc. 54-1 at 4 ¶ 10). Mr. Blackmon's pay did not decrease after his transfer. (Doc. 54-9 at 12).

In February 2020, Mr. Shade was hired as the head football coach and athletic director at Pinson Valley. (Doc. 50-2 at 269–270). Ms. Vincent was the only woman who worked with the football team under Mr. Shade. (Doc. 54-3 at 88).

In May 2020, Mr. Turner asked Ms. Vincent to be the assistant athletic director at Pinson Valley, a position unrelated to her employment with ATI. (*Id.* at 22). In part, the position would require Ms. Vincent to help the football coaching staff manage facilities and paperwork, and ensure the team was following Covid-19 protocols. (*Id.* at 27, 85). A couple days later, Ms. Vincent introduced herself in a football coaching staff meeting "as the athletic trainer and assistant athletic director." (*Id.* at 23–24).

On June 3, 2020, around a week after Ms. Vincent became an assistant athletic director, Mr. Turner told her that she would no longer hold that position. (Doc. 54-3 at 22–23, 28; *see* doc. 56 at 10 ¶ 29; doc. 74 at 8 ¶ 29). Ms. Vincent claimed that Mr. Turner did not explain his reasoning but said that she would still be an athletic

trainer at Pinson Valley. (Doc. 54-3 at 28). After her meeting with Mr. Turner, an assistant coach on the football team told Ms. Vincent that her removal as assistant athletic director "made sense because" Mr. Shade said that he "was not comfortable working with [Ms. Vincent] in football because [she] was a female." (*Id.* at 21, 29). After this conversation, Ms. Vincent reached out to Mr. Bush, her direct supervisor, to see if there were any available athletic trainer assignments around Birmingham, and he told her about a couple of positions, including one at Chelsea High School. (*Id.* at 64).

On the morning of June 5, 2020, Mr. Pequette emailed Mr. Turner that he "understand[s] that we have some issues with [Ms. Vincent] and may need to move on. Hoping to discuss. Let me know when you are free." (Doc. 54-8 at 58). Mr. Pequette testified that he did not recall how he knew Mr. Turner was having issues with Ms. Vincent. (Doc. 54-12 at 13–15). Later that morning, Mr. Pequette "had a phone conversation with [Mr.] Turner during which he informed [Mr. Pequette] he wanted [Ms.] Vincent removed from performing athletic training services at Pinson Valley." (Doc. 54-1 at 4 ¶ 13; doc. 54-5 at 60–62).

After the phone call, Mr. Pequette emailed Laura Erickson, Senior HR Business Partner at ATI, about transferring Ms. Vincent from Pinson Valley. (Doc. 65-27 at 2). The email stated that Mr. Turner had called Mr. Pequette that morning and "said they are officially fed up with [Ms. Vincent] and they are telling her today

that they do not want her to return. Mr. Turner said that he would officially document the request to remove her with valid reasoning and send it over." (*Id.*). Mr. Pequette told Ms. Erickson that he would call Ms. Vincent later that day and "let her know that the school does not want her back" and that ATI will "obviously need to look into/investigate the issue" and that she could stay home with pay until the investigation was complete. (*Id.*). Ms. Erickson asked Mr. Pequette if Mr. Turner gave "any indication of what the concerns are" and asked if it was the first time ATI had "heard of these concerns or [if] there [had] been ongoing issues." (*Id.* at 3). Mr. Pequette replied and said: "It's a longer story. But yes on going [sic]." (Doc. 65-27 at 5).

Near the end of the day on June 5, 2020, Mr. Turner asked Mr. Shade to go to Ms. Vincent's office to tell her to leave her keys before she left school that day. (Doc. 50-2 at 192–193; doc. 54-3 at 55–56). Mr. Shade asked two other male football coaches to come with him to Ms. Vincent's office because he "didn't know how she would react, so [he] felt like [he] needed to take people with [him] to be witnesses to [their] conversation." (Doc. 50-2 at 193). Ms. Vincent testified that the interaction was intimidating and made it clear that she had been terminated and was not welcome back at Pinson Valley. (Doc. 54-3 at 56). When Mr. Woodard and Mr. Blackmon were reassigned from Pinson Valley, they were not asked to leave in a similar manner. (*Id.* at 21).

7

Before Ms. Vincent left Pinson Valley that day, she called Mr. Pequette and told him what happened, and he claimed he was "completely unaware and wanted to know what had been going on at Pinson" Valley (*id.* at 57) despite already talking to Mr. Turner about his issues with Ms. Vincent (doc. 54-8 at 58; doc. 54-1 at 4 ¶ 13). During this call, Ms. Vincent told Mr. Pequette that she believed her removal from Pinson Valley was based on Mr. Shade's comments about preferring not to work with women. (Doc. 54-3 at 57, 59–60, 74). Mr. Pequette told Ms. Vincent to "play nice and plead [her] case" and that "he would be in contact." (*Id.* at 57). June 5, 2020 was the last day Ms. Vincent worked at Pinson Valley. (*See id.* at 33–34).

Soon after Ms. Vincent's removal from Pinson Valley, Mr. Bush identified a man, Alex Gee, to be one of the new athletic trainers at Pinson Valley. (Doc. 54-9 at 15; doc. 50-8 at 33). A couple weeks later, a woman, Taylor Cole, was transferred to the remaining athletic trainer position at Pinson Valley. (Doc. 54-1 at 7 ¶ 21, *see id.* at 17).

Mr. Pequette asked Mr. Turner to put his grievances with Ms. Vincent in writing and Mr. Turner complied by sending Mr. Pequette a letter on June 8, 2020. (Doc. 54-5 at 61; doc. 54-8 at 66). In the letter Mr. Turner stated that he wanted Ms. Vincent removed from Pinson Valley because she "has created somewhat of a toxic work environment for some of [Pinson Valley's] coaches." (Doc. 54-8 at 66). Mr. Turner stated that she made "personal comments" about the coaching staff and

was "attempt[ing] to assert her 'authority' by giving guidance and directions to coaches that have absolutely nothing to do with her role as an athletic trainer." (*Id.*). Further, Mr. Turner asserted that after his June 3, 2020 meeting with Ms. Vincent to ask her to stop portraying herself as an assistant athletic director, she "voice[d] her dissatisfaction with her role as . . . an athletic trainer" and made further "derogatory comments about certain coaches." (*Id.*). Mr. Turner testified that his reasons for requesting Ms. Vincent's reassignment as laid out in the June 8, 2020 email were consistent with what Mr. Turner and Mr. Pequette discussed in their June 5, 2020 phone call. (Doc. 54-5 at 80).

On June 9, 2020, after reviewing Mr. Turner's letter, Ms. Erickson determined that there was not "enough documentation to" terminate Ms. Vincent's employment with ATI. (Doc. 65-32 at 2). Ms. Erickson recommended that ATI inform Ms. Vincent that she could not return to Pinson Valley and "to offer her all open positions" in Alabama. (*Id.*).

On June 11, 2020, Ms. Erickson emailed Ms. Vincent about three new work assignments from which she could pick from: (1) a split assignment at Oakman High School and Carbon Hill High School in Walker County; (2) Pelham Middle School, and (3) Oak Mountain Middle School. (Doc. 54-4 at 27–28). These were all the open positions in Alabama that ATI had as of June 11, 2020. (Doc. 54-1 at 5–6 ¶¶ 17–20). Ms. Erickson told Ms. Vincent that accepting the middle school positions would

result in a pay cut but that her salary would remain the same if she accepted the high school assignment. (Doc. 54-4 at 28). ATI's "middle school assignments, as a group, have lower compensation rates than high school assignments" because there is a "lower number of students, sports, and activities associated with middle school assignments as compared to high school assignments." (Doc. 54-1 at 6 ¶ 22). The middle school assignments would also require Ms. Vincent to assist at high school events a couple evenings a week. (Doc. 54-4 at 22–24). If Ms. Vincent did not wish to work at any of the new assignments, she would "be parting ways with ATI." (*Id.* at 27).

Ms. Vincent asked if there were any open positions for high schools in Birmingham because she had heard there was an available position at Chelsea High School (*id.* at 27), but ATI indicated that no such position was open (*id.* at 26). Ms. Vincent testified that she did not want to work at one of the middle schools because it would require a pay cut, and she did not want to take the split assignment because it would require a ninety-minute commute and for her to cover two high schools instead of one. (Doc. 54-3 at 63, 65). On June 15, 2020, Ms. Vincent accepted a position at Pelham Middle School but informed Ms. Erickson and Mr. Pequette that it was done "reluctantly" and that she believed her reassignment was "in retaliation for [her] complaints of gender discrimination and is, itself, further gender discrimination." (Doc. 54-4 at 21).

Ms. Erickson set up a call between Ms. Vincent and Mr. Pequette on June 16, 2020, to respond to Ms. Vincent's email about discrimination and retaliation. (*Id.*). During that call, Ms. Erickson informed Ms. Vincent that Pinson Valley's request that she be removed was not discriminatory or retaliatory. (Doc. 73-3 at 4; *see* doc. 65-36 at 2). Ms. Erickson also offered Ms. Vincent a severance package of a continuation of pay for two weeks if she did not want to accept the position at Pelham Middle School. (Doc. 73-3 at 16, 20).

On July 14, 2020, Ms. Vincent resigned from her job at ATI because of "ATI's recent illegal actions towards [her] in removing [her] from [her] position at Pinson Valley High School because the head football coach did not feel comfortable working with a female, then forcing [her] to choose between two less desirable/less paying positions to have to accept one with less pay." (Doc. 54-4 at 30).

## II.   DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362 (11th Cir. 2018) (quotation marks omitted). Courts must "review[] the evidence and draw[] all reasonable inferences in the light

most favorable to the non-moving party." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).

Ms. Vincent has brought a Title VII gender discrimination claim ("Count Four") and a Title VII retaliation claim ("Count Five") against ATI for its removal of Ms. Vincent from Pinson Valley and its reassignment, with a corresponding pay cut, of Ms. Vincent to Pelham Middle School. (Doc. 7 at 25–40 ¶¶ 147–253).[1] In support of summary judgment, ATI first argues that it cannot be liable for the claims to the extent they are based on Ms. Vincent's removal from Pinson Valley because it did not have control over that decision. (Doc. 56 at 17–29). ATI then argues that Ms. Vincent cannot survive summary judgment for either her gender discrimination or retaliation claim. (*Id.* at 29–37). The court will first address whether ATI had control over Ms. Vincent's removal from Pinson Valley, then Ms. Vincent's gender discrimination claim, and finally Ms. Vincent's retaliation claim.

### 1. Did ATI have control over Ms. Vincent's removal?

ATI argues that because Mr. Turner made the decision to remove Ms. Vincent from Pinson Valley, ATI is not responsible for the decision. (*Id.* at 17–22).

---

[1] In its motion for summary judgment, ATI argues that Ms. Vincent's removal and reassignment should be treated as two separate potentially-discriminatory actions. (Doc. 56 at 15–16). In her response, Ms. Vincent does not address this argument but seems to agree that the removal and the reassignment are distinct acts. (*See* doc. 74 at 40) ("ATI's removal of [Ms.] Vincent from [Pinson Valley] and the reduction in pay are adverse <u>actions</u>.") (emphasis added). Thus, the court will consider Ms. Vincent's removal from Pinson Valley and her reassignment to Pelham Middle School as separate actions.

Ms. Vincent contends that ATI was the decisionmaker in removing Ms. Vincent from Pinson Valley. (Doc. 74 at 29–34). Both parties have submitted evidence to support their respective contentions. (*See* doc. 56 at 17–22; doc. 74 at 29–34).

Title VII prevents employers from discriminating against employees based on their membership in certain protected classes or retaliating against an employee for the employee's protected conduct. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006). Only an "employer" can be liable under Title VII for any alleged discrimination or retaliation against an employee. *See* 42 U.S.C. § 2000e-2 ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . ."); *id.* § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . .").

In situations where one entity employs an individual to perform services for a client, the original entity is considered a plaintiff's "employer" as long as it retains "sufficient control of the terms and conditions of employment." *Virgo v. Riviera Beach Assocs., Inc.*, 30 F.3d 1350, 1360 (11th Cir. 1994) (quotation marks omitted). When an entity has no control "over the adverse employment decision on which the Title VII suit is based," it cannot be liable for any alleged discriminatory or retaliatory conduct related to the adverse employment decision. *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244–45 (11th Cir. 1998).

There is a dispute of fact about which party had control over the decision to transfer Ms. Vincent. ATI contends that Mr. Turner made the decision to remove Ms. Vincent from Pinson Valley and provides testimony from Ms. Vincent, Mr. Turner, and Mr. Pequette all claiming that it was Mr. Turner's decision to have Ms. Vincent reassigned. (Doc. 56 at 17–18; *see* doc. 54-3 at 34; doc. 54-5 at 80; doc. 54-12 at 13). But Ms. Vincent provides separate testimony from Mr. Turner who claims that it was ATI's decision to move Ms. Vincent because she was ATI's employee not Pinson Valley's. (Doc. 54-5 at 73). Ms. Vincent also points to ATI's contract with Pinson Valley, which provides that ATI "remain[s] solely liable for the oversight and performance" of the athletic trainers. (Doc. 54-1 at 10–11). Finally, Ms. Vincent references the June 8, 2020 letter Mr. Turner wrote to Mr. Pequette explaining some of the issues he had with Ms. Vincent. (Doc. 65-23 at 2). At the end of the letter, Mr. Turner states that "[t]he aforementioned information is precisely why I am <u>asking</u> for Mrs. Emily Vincent to be removed from her role as athletic director from Pinson Valley High School." (*Id.*) (emphasis added). If Mr. Turner had control over whether Ms. Vincent worked at Pinson Valley, he would not need to ask Mr. Pequette to remove her.

Because there is a dispute of material fact as to whether ATI had control over the decision to remove Ms. Vincent from her position at ATI, the court will not grant summary judgment on this ground. And because Ms. Vincent is the non-movant, the

court will assume for the remainder of this opinion that ATI made the decision to remove Ms. Vincent from Pinson Valley.

### 2. Gender Discrimination Claim

Next, ATI contends that Ms. Vincent's gender discrimination claim cannot survive summary judgment. (Doc. 56 at 22–29). Ms. Vincent argues that she can survive summary judgment using the convincing mosaic framework and the mixed-motive theory. (Doc. 74 at 34–40). The court will first analyze Ms. Vincent's gender discrimination claim under the convincing mosaic framework, and then address the claim under the mixed-motive theory.

#### a. Convincing Mosaic Framework

Under the convincing mosaic framework for gender discrimination claims, a plaintiff can survive summary judgment if she establishes "a convincing mosaic of circumstantial evidence that would allow a jury to infer" discrimination on the part of her employer. *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quotation marks omitted). "An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 n.25 (11th Cir. 2011) (cleaned up). A convincing mosaic "may be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of [retaliatory] intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the

employer's justification is pretextual." *Lewis*, 934 F.3d at 1185 (cleaned up). The court will first address whether Ms. Vincent has offered enough evidence to establish a convincing mosaic for her discriminatory removal claim, then address her discriminatory reassignment claim under the convincing mosaic framework.

### i.   Ms. Vincent's removal from Pinson Valley

The evidence Ms. Vincent offers to show her removal from Pinson Valley was discriminatory under the convincing mosaic standard is: (1) that ATI made the decision to remove Ms. Vincent from Pinson Valley; (2) Mr. Blackmon received more favorable treatment when he was removed from Pinson Valley than Ms. Vincent; (3) that the timing of her removal from Pinson Valley was suspicious because Mr. Shade had been "around Ms. Vincent for a total of fifteen days" before she was removed; (4) Mr. Pequette stated that even if he knew Pinson Valley wanted to remove Ms. Vincent from her position as athletic trainer because of her gender, he would comply; (5) Ms. Vincent complained to Mr. Pequette before her removal about discriminatory comments made by Mr. Shade; (6) the fact that Ms. Vincent's replacement was a man; (7) that Ms. Vincent did not have any performance issues at Pinson Valley; and (8) that ATI offered Ms. Vincent a severance package if she wished to leave ATI. (Doc. 74 at 34, 36–40, 45–46).

First, Ms. Vincent claims that she can rely on the "falsity of [ATI's] explanation to infer the ultimate fact of discrimination." (*Id.* at 39). Ms. Vincent

argues that because there is evidence that ATI had control over her removal from Pinson Valley, the court can interpret ATI's contention that it did not have control over Ms. Vincent's removal to be a falsity utilized to hide ATI's true, discriminatory reason for Ms. Vincent's removal. (*Id.* at 39–40).

The trier of fact is permitted to "infer from the falsity of [an employer's] explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). But an employer's explanation must be "unworthy of credence" for the plaintiff to gain such a presumption. *Id.* There can be a factual dispute about an important issue in a case without anyone lying; for example, the dispute could be caused by a miscommunication or misunderstanding between the parties. Because a dispute of fact does not invariably indicate malicious intent, the court cannot assume an employer acted discriminatorily just because it offers an alternative explanation for its actions that the court cannot credit at the summary judgment stage. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) ("Inferences from the nonmoving party's 'specific facts' as to other material facts . . . may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law.").

17

Second, Ms. Vincent contends that Mr. Blackmon received better treatment than she did when he was removed from Pinson Valley. (Doc. 74 at 40). Ms. Vincent's argument does not clarify exactly what treatment she is referencing (*see id.*) and the only differing treatment that the court can discern from the record is that Mr. Shade did not inform Mr. Blackmon of his removal from Pinson Valley in the presence of two other coaches like he did for Ms. Vincent (doc. 54-3 at 65). Assuming this constitutes evidence of gender discrimination, Mr. Shade's actions cannot be imputed to ATI. Mr. Turner is the person who told Mr. Shade to inform Ms. Vincent of her removal from Pinson Valley (doc. 50-2 at 192–193; doc. 54-3 at 55–56), there is no evidence that Mr. Pequette or anyone at ATI knew that Mr. Turner asked this of Mr. Shade. Thus, any differences between how Mr. Blackmon learned of his removal and how Ms. Vincent learned of her removal do not raise an inference that ATI intentionally discriminated against Ms. Vincent.

Ms. Vincent's third piece of evidence—the suspicious timing of her removal after fifteen days of working with Mr. Shade—is similarly unpersuasive. The only evidence she cites to support this argument is a 2020 calendar with six days circled: February 27, March 13, May 31, June 1, June 5, and June 8. (Doc. 65-41 at 2; *see* doc. 74 at 34). This is not evidence that Ms. Vincent was "around" Mr. Shade for fifteen days before she was removed. Further, there is evidence that Mr. Shade was hired in February of 2020 (doc. 50-2 at 269–270), so it is unclear from Ms. Vincent's

arguments and evidence how she was only around Mr. Shade for fifteen days before she was removed from Pinson Valley. Thus, Ms. Vincent has not established there was suspicious timing regarding Mr. Shade's start at Pinson Valley and Ms. Vincent's removal.

Ms. Vincent's fifth piece of evidence, that she complained to Mr. Pequette before her removal about discriminatory comments made by Mr. Shade, does not establish ATI discriminated against Ms. Vincent. (*See* doc. 74 at 38). Knowing an individual made a discriminatory comment is not evidence that the person with knowledge later acted with discriminatory intent. *See Llampallas*, 163 F.3d at 1248–49 (holding that when person with discriminatory animus and decisionmaker are different people, plaintiff must prove that the discriminatory animus caused the decisionmaker to take an adverse employment action). For Mr. Pequette's knowledge of Mr. Shade's comments to be evidence that ATI discriminated against Ms. Vincent, Ms. Vincent would have had to offer evidence that Mr. Shade's animus caused Mr. Pequette to remove Ms. Vincent from Pinson Valley, and there is no such evidence in the record.

Ms. Vincent's seventh piece of evidence is that she did not have performance issues. (*See* doc. 74 at 38). Ms. Vincent's success as an athletic trainer is not evidence that ATI discriminated against her in removing her from Pinson Valley. ATI asserts it removed Ms. Vincent because Mr. Turner requested it. (Doc. 56 at 25; *see also*

19

doc. 54-1 at 12). And while Ms. Vincent contends that ATI made the decision to remove her from Pinson Valley (doc. 74 at 29–34), she does not dispute that ATI's decision was made at Pinson Valley's request (*see id.* at 34). Because ATI removed Ms. Vincent because of Mr. Turner's request, that Ms. Vincent had no disciplinary issues would not have factored into its removal decision. So, whether Ms. Vincent was a good employee was not relevant to ATI's decision to remove her, and thus cannot be evidence that ATI's decision was discriminatory.

Finally, that ATI offered Ms. Vincent a severance package when she put in her two weeks' notice is not evidence of discrimination. (*See* doc. 74 at 45–46; *see also* doc. 73-3 at 16, 20). Ms. Vincent cites the Eleventh Circuit's decision in *Patterson v. Georgia Pacific, LLC*, 38 F.4th 1336, 1354–55 (11th Cir. 2022) for the proposition that an offer to pay employees severance packages that are contingent on a full release of claims can be evidence of pretext. (Doc. 74 at 46). Ms. Vincent argues that even though there is no evidence the severance package included a release of her claims against ATI, it "is the normal practice when an employee is offered a severance package" and thus the court should assume ATI's severance offer included such a release. (*Id.* at 45). But in *Patterson*, there was evidence that the employer's offer of a severance package affirmatively included a release of claims. *Patterson*, 38 F.4th at 1354–55. Here, because there is no such evidence in

the record, the court is not willing to assume such a contingency. Thus, ATI's offer of a severance package to Ms. Vincent is not evidence of discrimination.

Therefore, the only evidence Ms. Vincent offers that could create an inference of discrimination under the convincing mosaic standard is (1) Mr. Pequette's testimony that he would have complied with the request to transfer Ms. Vincent from Pinson Valley even if he knew Mr. Turner and Mr. Shade were discriminating against Ms. Vincent because of her gender and (2) that Ms. Vincent was replaced at Pinson Valley by a man. (*See* doc. 54-12 at 21; doc. 74 at 37). Considered together, this evidence does not create an inference that any of ATI or Mr. Pequette's actions were induced by Ms. Vincent's gender. Thus, a reasonable jury could not look at Ms. Vincent's evidence and infer that ATI removed Ms. Vincent from Pinson Valley due to her gender.

### ii.   Ms. Vincent's reassignment to Pelham Middle School

As support for her argument that her reassignment to Pelham Middle School survives summary judgment under the convincing mosaic theory, Ms. Vincent relies on any relevant evidence previously discussed, as well as two additional pieces of evidence: (1) that she received a pay cut after her reassignment and (2) that Mr. Blackmon did not receive a pay cut when he was reassigned from Pinson Valley. (Doc. 74 at 38–39).

Without context, Ms. Vincent and Mr. Blackmon's pay discrepancies after their reassignments might give the appearance of discrimination. But ATI provides a non-discriminatory reason why Ms. Vincent received a pay cut when she was transferred from Pinson Valley even though Mr. Blackmon did not: because Ms. Vincent selected a job with a corresponding pay cut. (*See* doc. 56 at 32). In fact, ATI has offered evidence it treated Mr. Blackmon and Ms. Vincent identically after their removal from Pinson Valley. Both were offered every available position that ATI had at the time and were allowed to choose which open position they wished to transfer to. (*See* doc. 54-1 at 4 ¶¶ 9–10,  5–6 ¶¶ 17–20). Both were offered positions that would not require them to accept a pay cut (*id.* at 6 ¶ 21; *see* doc. 54-9 at 12), but Ms. Vincent decided to accept a lower-paying position (*see* doc. 65-35 at 2, 10). Ms. Vincent's argument does not address her agency in the pay cut. (*See* doc. 74 at 38–39). Thus, that her new position paid less money when Mr. Blackmon's did not is not evidence of discrimination.

### b.  Mixed Motive Theory

Before addressing the merits of Ms. Vincent's arguments under the mixed motive theory, the court must address both parties' contentions that the court should not consider the other parties' arguments on this issue. In its initial brief, ATI did not make an argument for summary judgment using the mixed motive theory. (*See generally* doc. 56). In response, Ms. Vincent asserts that she intends to survive

summary judgment under the mixed motive theory and argues that because ATI did not address her mixed-motive argument in its initial brief, it "abandoned any argument against this theory." (Doc. 74 at 35 n.4).

In reply, ATI argues that it should not be precluded from opposing Ms. Vincent's arguments under the mixed-motive theory because her complaint does not state she is pursuing her discrimination claim under that theory and thus ATI should not have been required to guess that she would seek to survive summary judgment that way. (Doc. 77 at 16). ATI also argues that Ms. Vincent cannot bring a mixed-motive claim for the first time at summary judgment because she is not permitted to "raise new claims at the summary judgment stage." (*Id.* at 15–16) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

Discrimination claims under Title VII are classified "as either mixed-motive or single-motive claims." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016). A mixed-motive claim requires that a plaintiff show an illegal bias "was a motivating factor for an adverse employment action, even though other factors motivated the action." *Id.* (cleaned up). In contrast, a single-motive claim requires that the plaintiff show "bias was the true reason for the adverse action." *Id.* These different theories of discrimination are simply alternative causation standards, not distinct causes of action. *Id.* at 1235 n.4; *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 n.12 (1989) (plurality opinion), *superseded by statute on other*

*grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074, *as recognized in Comcast Corp. v. Nat'l Assoc. of Afr. American-Owned Media*, 140 S. Ct. 1009, 1017 (2020).

Therefore, the court will consider Ms. Vincent's gender discrimination claim under a mixed-motive theory of causation. Ms. Vincent has provided the court with no binding authority for her proposition that ATI cannot oppose an argument she made for the first time in her response in opposition to summary judgment. (*See* doc. 74 at 35 n.4). The court is also persuaded by ATI's arguments that it should not be required to brief every potential strawman issue in a motion for summary judgment to avoid waiving arguments against them. (*See* doc. 77 at 16). Thus, the court will now address the merits of Ms. Vincent's gender discrimination claim under the mixed-motive framework.

To survive summary judgment using circumstantial evidence under a mixed-motive theory, a plaintiff bears the burden of proof to establish "(1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was a motivating factor for the defendant's adverse employment action." *Quigg*, 814 F.3d at 1232–33 (cleaned up). The court will first address whether Ms. Vincent satisfied her burden regarding her discriminatory removal claim and then will address her discriminatory reassignment claim.

### i.   Ms. Vincent's removal from Pinson Valley

ATI contends that Ms. Vincent's removal from Pinson Valley cannot survive summary judgment under the mixed motive theory because there is no evidence that her gender was a motivating factor in her removal from Pinson Valley. (Doc. 77 at 17; *see id.* at 13–15).[2]

Ms. Vincent relies on the same evidence used to defend her convincing mosaic argument to establish that her gender was a motivating factor in ATI's decision to remove her from Pinson Valley. (Doc. 74 at 36–40, 45–46). Just as the court found for her argument under the convincing mosaic standard, none of the evidence offered by Ms. Vincent establishes that any of ATI or Mr. Pequette's actions in removing Ms. Vincent from Pinson Valley were motivated by Ms. Vincent's gender. *See supra* pg. 16–21.

### ii.   Ms. Vincent's reassignment to Pelham Middle School

ATI contends that its reassignment (with a corresponding pay cut) of Ms. Vincent was not an adverse action because ATI gave Ms. Vincent an option to accept an assignment that would have allowed her salary to remain the same after reassignment. (Doc. 56 at 29–33). ATI also argues that Ms. Vincent has not offered

---

[2] ATI conceded adverse employment when analyzing Ms. Vincent's claim under the *McDonnell Douglas* framework. (*See* doc. 56 at 22–24). Later ATI argued Ms. Vincent did not present evidence that the removal was an adverse employment action under the mixed-motive analysis. (Doc. 77 at 17). ATI does not acknowledge or explain its different approach. As previously discussed, mixed-motive and single motive discrimination claims are not separate actions, but different theories of proof. *Quigg*, 814 F.3d at 1235 n.4. Thus, an adverse action under the *McDonnell Douglas* framework is also an adverse action under the mixed-motive theory.

evidence that ATI's decision to reassign Ms. Vincent—and her reassignment's corresponding pay cut—were motivated by Ms. Vincent's gender. (Doc. 77 at 18–19).

For discrimination claims, an adverse employment action must be a "tangible employment action" which "consist[s] of things that affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020). Whether an employer's action is considered adverse is determined "as viewed by a reasonable person in the circumstances," an "employee's subjective view of the . . . action is not controlling." *Webb-Edwards v. Orange Cnty. Sheriff's Off.*, 525 F.3d 1013, 1031 (11th Cir. 2008) (quotation marks omitted).

Ms. Vincent does not argue that her reassignment and corresponding pay cut to Pelham Middle School was an adverse action for her discrimination claim. (*See generally* doc. 74). Under the mixed motive framework, it is Ms. Vincent's burden to establish she suffered an adverse action, and thus her failure to argue that her reassignment and corresponding pay cut was an adverse action for her discrimination claim is fatal. *See Quigg*, 814 F.3d at 1239. But even if Ms. Vincent did suffer an adverse action, she has not offered evidence ATI reassigned her to Pelham Middle School because of her gender.

Ms. Vincent's evidence regarding ATI's motivation for reassigning her to Pelham Middle School is the same evidence that she provided for her convincing mosaic claim: (1) that she received a pay cut after her reassignment and (2) that Mr. Blackmon did not receive a pay cut when he was reassigned from Pinson Valley. (Doc. 74 at 38–39). This evidence is not enough to establish that ATI's reassignment of Ms. Vincent was motivated by Ms. Vincent's gender because ultimately both Ms. Vincent and Mr. Blackmon were treated equally throughout the reassignment process, as explained above. *See supra* pg. 21–22.

Accordingly, because Ms. Vincent cannot survive summary judgment for her discrimination claim under the convincing mosaic or mixed-motive theories, the court **WILL GRANT** ATI's motion for summary judgment as to Count Four.

### 3. Retaliation Claim

ATI argues it is entitled to summary judgment on Ms. Vincent's Title VII retaliation claim because she cannot establish a *prima facie* case of retaliation or pretext under the *McDonnell Douglas* standard. (Doc. 56 at 26–32, 34–36). Ms. Vincent disagrees. (Doc. 74 at 40–46).

Title VII prohibits employers from retaliating against employees because, among other things, the employee "has opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). Generally, retaliation claims under Title VII can be established with direct or circumstantial evidence of

27

retaliatory conduct. *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008). Where, as here, a plaintiff relies on circumstantial evidence to prove her retaliation claim, the court typically analyzes the claim under the *McDonnell Douglas* framework. *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1337 (11th Cir. 2022).

Under this test, the plaintiff must first establish a *prima facie* case. *Id.* at 1338. "If the plaintiff satisfies this burden," her employer must then "articulate a legitimate, [nonretaliatory] reason for his actions." *Id.* If such a reason is proffered, the burden returns to the plaintiff to "show that the reason given by the employer was a mere pretext for" retaliation. *Id.*

A plaintiff satisfies her burden of establishing a *prima facie* case of retaliation under Title VII when she demonstrates "(1) that she engaged in statutorily protected activity, (2) that she suffered an adverse action, and (3) that the adverse action was causally related to the protected activity." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020) (quotation marks omitted).

Ms. Vincent alleges that ATI retaliated against her for complaining about gender discrimination to Mr. Pequette by removing her from Pinson Valley and transferring her to a new position at Pelham Middle School with a corresponding pay cut. (Doc. 7 at 33–40 ¶¶ 204–253). The court will first address whether Ms. Vincent can make out a *prima facie* case of retaliation for her removal from

Pinson Valley and then address whether she can do so for her reassignment to Pelham Middle School. Finally, the court will address whether Ms. Vincent can establish ATI's proffered reasons for its actions were pretextual.

> ### a. *Ms. Vincent's removal from Pinson Valley*

For Ms. Vincent's retaliatory removal claim, both parties agree that Ms. Vincent engaged in statutorily protected activity and that she suffered an adverse action. (*See* doc. 56 at 26–29). But ATI contends that Ms. Vincent is unable to establish a *prima facie* case of retaliation regarding her removal from Pinson Valley because her protected activity occurred after the removal decision, breaking the chain of causation. (*Id.*).

A plaintiff can establish a causal connection between her protected activity and her employer's adverse action by showing "that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Patterson*, 38 F.4th at 1351. "[C]lose temporal proximity between the employee's protected conduct and the adverse action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Id.* at 1352 (cleaned up).

Ms. Vincent states that her protected activity (informing Mr. Pequette about Mr. Shade's comments) occurred within two days of her removal, which is sufficient temporal proximity to establish causation. (Doc. 74 at 41–44); *see Patterson*, 38

F.4th at 1352 (considering one week to be close temporal proximity). To establish this, Ms. Vincent cites to Mr. Pequette's testimony that Ms. Vincent told him about Mr. Shade's comments before her removal. (Doc. 74 at 12 ¶ 43; *see* doc. 54-12 at 25). But Mr. Pequette's testimony is inconsistent with Ms. Vincent's own testimony that she told Mr. Pequette about the comments in a telephone call after she was removed. (Doc. 54-3 at 57). The court is not required to "declin[e] to credit some of the nonmovant's own testimony" because a different witness's testimony is "most helpful to the nonmovant." *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (en banc) ("Our duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part."); *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1295–96 (11th Cir. 2012). Given Ms. Vincent's testimony, there is no causal connection between her removal from Pinson Valley and her complaint of discrimination. Thus, Ms. Vincent has failed to establish a *prima facie* case of retaliation for her removal from Pinson Valley.

### b. Ms. Vincent's reassignment to Pelham Middle School

For Ms. Vincent's retaliatory reassignment claim, both parties agree that Ms. Vincent engaged in statutorily protected activity and that there is a causal connection between Ms. Vincent's protected activity and her reassignment. (*See* doc. 56 at 29–33). But ATI contends that Ms. Vincent's reassignment to Pelham Middle School was not an adverse action because it offered her every available position it

30

had at that time. (*Id.*). In particular, ATI offered Ms. Vincent another high school position at the same pay she had been receiving but Ms. Vincent selected Pelham Middle School.[3] Ms. Vincent only argues that her reassignment was an adverse action because it required that she take a pay cut and assist at high school events a couple evenings a week. (Doc. 74 at 40–41).

Retaliation claims under Title VII employ a more lenient definition of adverse actions than discrimination claims do. *See White*, 548 U.S. at 63–67. For an employer's action to be considered adverse in retaliation claims, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," which means it might "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68.

Ms. Vincent's argument that her reassignment was an adverse action ignores her choice in the matter. (*See* doc. 74 at 40–41). While normally a pay cut would constitute an adverse action, Ms. Vincent was the one that made the decision to go to a school with a corresponding pay cut, ATI offered her a position that would not decrease her salary, but she decided to accept the lower-paying position. That she took a pay cut and had additional responsibilities at Pelham Middle School is

---

[3] The court notes that the high school position ATI offered Ms. Vincent would have required her to make a ninety-minute commute every day. The court does not decide whether the increased commute would constitute an adverse action because Ms. Vincent does not make that argument.

irrelevant when it was her choice to work there. Thus, because Ms. Vincent's reassignment was not an adverse action, she has failed to establish a *prima facie* case of retaliation for her reassignment to Pelham Middle School.

### c. *ATI's proffered reason and pretext*

Even if Ms. Vincent could establish a *prima facie* case of retaliation, she would not prevail. If a plaintiff puts forth a *prima facie* case of retaliation, the burden shifts to the defendant "to articulate a legitimate, nonretaliatory reason for" the adverse action. *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021). An employer "need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it [retaliated] against the" employee. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254–55 (1981) (internal citation omitted).

ATI's proffered reason for Ms. Vincent's removal from Pinson Valley is that Mr. Turner requested that she not return to the school. (Doc. 56 at 28–29). ATI's reason for her reassignment and corresponding pay cut is that it offered Ms. Vincent all of its available positions after she was removed and she accepted one with a pay cut. (*Id.* at 35). Thus, the burden shifts to Ms. Vincent to establish ATI's proffered reasons for her removal and reassignment were pretextual. *See Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994).

To establish pretext, a plaintiff must provide evidence "both that the reason was false, and that [retaliation] was the real reason" for the adverse employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis omitted). The only argument Ms. Vincent makes regarding pretext is that there is close temporal proximity between her complaint of discrimination and her removal from Pinson Valley and reassignment to Pelham Middle School. (Doc. 74 at 44–45). Even assuming that is pretext evidence, it does not establish that retaliation was the real reason for any of ATI's actions. And even if the court were to interpret Ms. Vincent's arguments regarding the convincing mosaic to be pieces of pretext evidence, the court has already explained why this evidence is not sufficient to survive summary judgment.

Accordingly, Ms. Vincent cannot survive summary judgment for her retaliation claim under the *McDonnell Douglas* standard and the court **WILL GRANT** ATI's motion for summary judgment as to Count Five.

## III.   CONCLUSION

Accordingly, the court **WILL GRANT SUMMARY JUDGMENT** in favor of ATI and against Ms. Vincent.

The only remaining claims in this case are state law claims against Mr. Turner and Mr. Shade. (*See* doc. 7 at 41–47 ¶¶ 254–297). In her complaint, Ms. Vincent

contends the court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(c). (*See id.* at 1 ¶ 1).

"[C]ourt[s] must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). All federal claims in this case have been dismissed. The court has doubts as to whether it has diversity jurisdiction over the remaining state law claims. *See Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) ("Residence along is not enough" to determine citizenship for diversity purposes). And while the court could exercise supplemental jurisdiction over the remaining claims, 28 U.S.C. § 1367(a), the Eleventh Circuit encourages district courts to decline to exercise supplemental jurisdiction over state law claims if all federal claims are dismissed before trial, *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). Accordingly, the court **WILL ORDER** Ms. Vincent to address, in writing, whether this court has diversity jurisdiction on or before **July 6, 2023**.

**DONE** and **ORDERED** this June 22, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

34